## COLUMBIA MALTING CO. v. CHURCH.

(Circuit Court of Appeals, Second Circuit. April 13, 1909.)

No. 201.

SALES (§ 35*)—VALIDITY OF CONTRACT—ASSENT OF PARTIES.

A memorandum of sale by defendant to plaintiff at a price and on terms therein stated of 25,000 bushels of No. 1 standard malt, to be delivered as ordered during the season of 1906 and 1907, "subject trial car," and signed by both parties, constituted a binding contract which entitled plaintiff to delivery of the malt on his order made in the spring of 1907, the provision for a trial car being one for his benefit solely, and which he could waive.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 62; Dec. Dig. § 35.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

On writ of error to the Circuit Court for the Southern District of New York to review a judgment entered upon the verdict of a jury in favor of the defendant in error, plaintiff below, for $11,690.

Kenneson, Emley & Rubino (Thaddeus D. Kenneson, of counsel), for plaintiff in error.

James S. Lehmaier (James S. Lehmaier and William W. Pellet, of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The plaintiff below, as assignee of Michael Winter, brought this action to recover damages for the breach of a contract entered into between Winter and the defendant whereby the latter agreed to deliver to the former 25,000 bushels of malt.

The contract was evidenced by the following writings:

The Columbia Malting Company.
Chicago, Ill.
Memorandum of Sale.
Date Oct. 5th, 1906.
Sold to M. Winter.
P. O. Address, Orange, N. J.
Quantity 25,000 bushels.
Quality No. 1 Standard Malt.
Price sixty-one (61c.) per bus.
F. O. B. Orange, N. J.
Terms of payment As usual.
When to be shipped During season of 1906 & 1907, as ordered.
In Bags or Bulk Bags.
Shipping Directions, Via D., L. & W. R. R.
To Orange, N. J.
Remarks Subject trial car.
The Columbia Malting Company,
            per F. Schwarz, Seller
Correct Orange Brewing Wm. F. Wurster.
Supt. Purchaser.

On or about the 10th of October, 1906, the Orange Brewery (i. e., Michael Winter) received a letter from the defendant dated October 8th, as follows:

"We are in receipt of your order, through our Mr. Fred Schwarz, for 25,000 bushels of our New Standard Malt, which we enter in accordance with price, terms and conditions stated in written contract. Thanking you and assuring you of satisfactory deliveries, we remain."

On April 24, 1907, Winter telegraphed the defendant "ship car of malt at once" and in reply received a letter of same date as follows:

"We are in receipt of your wire this morning, saying 'Ship car of Malt at once.' We presume from this wire that you are under the impression that you have a contract with us, but on referring to our books we find that we have none with you, but do find that there was a memorandum for 25,000 bushels, dated Oct. 5th, 1906, at 61c. subject to a trial car. As six months is over and past since this date, and you have not ordered a trial car, we, of course, do not consider this a contract at all. .

"If you are in the market, however, we will be very glad to sell you at prevailing prices and would suggest that in that case you communicate with our Mr. Fred Schwarz, 338 Produce Exchange, New York, N. Y."

The matter was then placed in the hands of counsel on both sides and their respective views were stated in writing, the contention of the defendant being that there was no contract as the quality of the malt was to be determined by the acceptance of the trial car.

On May 18, 1907, the attorneys for Winter wrote the defendants as follows: ·

"We are authorized by Michael Winter, trading as Orange Brewery, to direct you to ship them 25,000 bushels of No. 1 Standard malt, as per contract of October 5, 1906, beginning at once, and shipping one car every ten (10) days.

"The trial car is waived by Mr. Winter, but the malt is required to be No. 1 Standard malt as per contract."

The malt was not delivered. Winter went into the open market to purchase the malt and has recovered the difference between the contract price and the market price.

The agreement to sell on the one side and to buy on the other was made between business men who unquestionably intended that their negotiations should culminate in a contract having some commercial value, a contract binding upon both parties and capable of being enforced if repudiated by either. The construction placed upon the contract by the defendant is too technical for practical everyday experience. Business could not be carried on if such interpretations are to prevail. The provision for the trial car was solely for the benefit of the purchaser; he could demand it or waive it as he saw fit. Waiving this obligation was entirely in the interest of the defendant, it was then free to furnish any No. 1 Standard malt it chose, even an inferior grade, and the purchaser was obliged to receive it. The theory of the defendant that the "memorandum of sale" of October 5th was merely an unaccepted offer of sale is untenable, in view of the fact that it states on its face that "25,000 bushels of No. 1 Standard malt were sold to M. Winter for 61 cents per bushel, to be shipped as ordered during the seasons of 1906 and 1907" and that these terms were accepted by Winter. If formal ratification were necessary the defendant's letter of October 8th furnishes such ratification, no other reasonable interpretation can be given it. The defendant there says that it has received the order and has entered it "in accordance with price, terms and conditions stated in the written contract."

Winter is thanked and assured that "satisfactory deliveries" will be made. If all this did not bind the defendant it is difficult to understand what language could have been used which would have had that effect. The trial court submitted to the jury the question whether the offer to sell the 25,000 bushels of malt was accepted within a reasonable time.

In view of the fact that by the terms of the agreement the malt was to be shipped "during the season of 1906 and 1907 as ordered" by Winter and that he did order it during the season of 1907, this ruling was surely as favorable to the defendant as it had a right to expect.

We find no reversible error in the record and the judgment is therefore affirmed with costs.